UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

---

JOANNE PEDERSEN & ANN MEITZEN, )
GERALD V. PASSARO II, )
LYNDA DEFORGE & RAQUEL ARDIN, )
JANET GELLER & JOANNE MARQUIS, )
SUZANNE & GERALDINE ARTIS, )
BRADLEY KLEINERMAN & JAMES GEHRE, and )
DAMON SAVOY & JOHN WEISS, )
                                              )
      Plaintiffs, )
                                              )
v. )    CIVIL ACTION
                                              )    No. 3:10-cv-1750 (VLB)
OFFICE OF PERSONNEL MANAGEMENT, )
TIMOTHY F. GEITHNER, in his official capacity )
as the Secretary of the Treasury, and )
HILDA L. SOLIS, in her official capacity as the )
Secretary of Labor, )
MICHAEL J. ASTRUE, in his official capacity )
as the Commissioner of the Social Security )
Administration, )
UNITED STATES POSTAL SERVICE, )
JOHN E. POTTER, in his official capacity as )
The Postmaster General of the United States of )
America, )
DOUGLAS H. SHULMAN, in his official )
capacity as the Commissioner of Internal )
Revenue, )
ERIC H. HOLDER, JR., in his official capacity )
as the United States Attorney General, )
JOHN WALSH, in his official capacity as Acting )
Comptroller of the Currency, and )
THE UNITED STATES OF AMERICA, )
      Defendants. )

---

**<u>PLAINTIFFS' OPPOSITION TO INTERVENOR-DEFENDANT'S
MOTION TO STAY PROCEEDINGS</u>**

**Oral Argument is Not Requested.**

In accordance with Local Rule 7(a), the Plaintiffs submit this opposition to the motion of the Intervenor-Defendant, the Bipartisan Legal Advisory Group of the United States House of Representative (the "House"), to stay proceedings.

## Background

### The Complaint

The Plaintiffs, six married same-sex couples and one widower, commenced this action on November 9, 2010 (Docket No. 1), asserting that Section 3 of the Defense of Marriage Act ("DOMA"), 1 U.S.C.§7, is unconstitutional as applied to them under the equal protection component of the Fifth Amendment of the United States Constitution in that DOMA:

(1) has denied, and continues to deny, to Damon Savoy and Joanne Pedersen, a federal employee and retiree respectively, the ability to enroll their spouses in the Federal Employee Health Benefit Program;

(2) has denied, and continues to deny, to federal employee Lynda DeForge the ability to take leave under the FMLA to care for her spouse;

(3) has denied, and continues to deny, to Joanne Marquis, a retired lifelong teacher the ability to extend the medical cost supplement – available under the N.H. Retirement System – to her spouse;

(4) has denied, and continues to deny, to Jerry Passaro, the surviving spouse of Thomas Buckholz, the Qualified Preretirement Survivor Annuity (QPSA) benefits under the defined benefit pension plan in which Mr. Buckholz had vested;

(5) has denied, and continues to deny, to Jerry Passaro the Social Security

>   lump sum death benefit; and
>
>   **(6) has denied, and continues to deny from year to year, to married couples Suzanne and Geraldine Artis and Bradley Kleinerman and James Gehre the financial advantages of filing their federal income taxes as "married filing jointly."**

The Plaintiffs have all sought to enjoin the pertinent federal officials from continuing to exclude them – or indirectly effectuate their exclusion – from these various valuable incidents of being married by their home states.  A ruling in their favor in this action will, upon judgment, entitle them to the relief they seek.

<u>**Proceedings To Date**</u>

This action was filed on the same date as another action challenging DOMA in the context of a claim concerning the federal estate tax marital deduction – *Windsor v. United States of America*, 10 Civ. 8435 (SDNY)(BSJ)(JCF), *appeal docketed*, No. 12-2335 (2d Cir.) ("the *Windsor* action").

Expert discovery and depositions as well as briefing on dispositive motions to dismiss and for summary judgment were coordinated by all parties as between the two cases.  (*See* Docket Nos. 53-54).

Ultimately, briefing on the House's motion to dismiss and the Plaintiffs' motion for summary judgment was concluded on October 11, 2011.  (Docket No. 104).  Neither the parties nor the Intervenor requested oral argument.

Now, some 8 and a half months after all dispositive motion briefing has concluded and faced with no upcoming litigation deadlines of any kind, the House has moved to "stay proceedings" for no other reason than that the above-

referenced *Windsor* action has just been docketed at the Second Circuit and for the indefinite period of a ruling by the Second Circuit, "including any ruling by that Court on any timely filed petition for rehearing or petition for rehearing en banc." (Docket No. 108, p. 1).

The House's motion should be denied.

## Discussion

I.  **THE INTERVENOR-DEFENDANT'S MOTION TO STAY SHOULD BE DENIED.**

Although couched as a motion to "stay proceedings," this is really a misnomer in this case. There are truly no "proceedings" to stay. In reality, the House is simply asking this Court not to render a decision on the pending dispositive motions. In short, the House, as Intervenor, is baldly asking this Court to deny the Plaintiffs the right: (1) to have their case resolved without undue delay; and (2) to have the benefit of the Court's analysis of a significant question of constitutional law which the House itself describes as "one of great national importance." (*Windsor*, 2d Cir., Docket No. 49, p. 6).

Having the burden of demonstrating the need for a stay, the House points to nothing but the notion that a ruling on the legal issues in the *Windsor* appeal – should they be reached – will "be directly controlling" or "significantly inform this Court[]" as to the merits of the Plaintiffs' claims. (Docket No. 109, p. 5). As demonstrated below, this is not an adequate showing to support the extraordinary relief of a stay on the facts of this case.

A. <u>The Legal Standards</u>.

The legal standards for a stay are well-settled. In the seminal case of

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936), the Supreme Court established these essential points:

- the power to stay is "incidental to the power in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants," *id.* at 254;

- how this is done "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance," *id.* at 254-255;

- however, the movant "must make out a <u>clear case of hardship or inequity</u> in being required to go forward, if there is <u>even a fair possibility</u> that the stay for which he prays will work damage to some one else," (emphasis added), *id.* at 255;

- moreover, and most pertinent here, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both," *id.* at 255;

- a delay may be required if "public welfare or convenience will thereby be protected" but the delay may not be "immoderate in extent" or "oppressive in its consequences," *id.* at 256[1];

- discretion is abused "by a stay of indefinite duration in the absence of a pressing need," *id.* at 255; and

- the "burden of making out the justice and wisdom of a departure from the beaten track lay heavily on the [movants]" and discretion is abused if a stay is "not kept within the bounds of moderation," *id.* at 256.

The federal courts have continued to rely on *Landis* as the polestar in this area of the law, *see, e.g., Louis Vuitton Malletier S.A. v. Ly USA, Inc.*, 676 F.3d 83, 96-97 (2d Cir. 2012) (quoting *Landis*); and they have continued to expound on its principles in order to determine the "fairest course for the parties …." *Leyva v. Certified Grocers of Calif., Ltd.,* 593 F.2d 857, 863 (9th Circ. 1979)(Kennedy, J.).

---

[1] The Court noted that this might be true "[e]specially in cases of extraordinary public moment." *Id.* at 256. However, in 1997, the Court, citing this language, still vacated a "lengthy and categorical stay" involving the President of the United States. *Clinton v. Jones*, 520 U.S. 681, 707-708 (1997).

Looking at the movant, it has been consistently affirmed that the "movant bears a heavy burden of showing necessity for the stay." *Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 283 F. Supp. 2d 612, 614 (D. Conn. 2003) *quoting from Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991); *Clinton v. Jones*, *supra* at 708 (proponent of stay bears burden of establishing its need); *Louis Vuitton, supra* at 97 (same); *Baisden v. Bourne*, 2006 WL 3497854 (D. Neb.) (burden on movant of showing specific hardship or inequity).

With respect to need, i.e., to avoid hardship or inequity, the courts have been clear that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005); *Baisden v. Bourne*, *supra* at *3-4 (same; also, "mere compliance with a discovery schedule" is not a hardship to justify a stay).

Likewise, the desire to proceed "with one case at a time does not justify the burden of delay a stay may cause the [opposing parties]." *Id.* at *4.[2]

Turning to the parties against whom a stay is sought, the courts are clear that "[a] stay in a civil case is an extraordinary remedy." *Hicks v. City of N.Y.*, 268 F. Supp. 2d 238, 241 (E.D.N.Y. 2003). And this is so because: (1) "federal courts have a 'virtually unflagging obligation,' absent 'exceptional circumstances,' to exercise jurisdiction when a case is properly before the Court," *Larobina v. Comm. of Transp.*, 2005 WL 2789321 (D. Conn.) *3; (2) plaintiffs have a "right to

---

[2] Even simultaneous arbitration and litigation may not justify a stay where there is "no other prejudice [to third-party defendant] … sufficient to offset the shared interest of plaintiff and defendant in resolving [their] claims …." *Security Ins. Co., supra* at 615.

have [their] case[s] resolved without undue delay," *Williford v. Armstrong World Industries, Inc.*, 715 F.2d 124, 128 (4th Cir. 1983); *see Security Ins. Co., supra* at 615 (shared interest of parties in resolving claims); and (3) an indefinite stay is "an onerous burden on a litigant's right to seek redress against the United States," *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1418 (Fed. Cir. 1997).

Moreover, the courts continue to weigh carefully the "fair possibility," *Landis, supra* at 255, that the stay will cause damage or harm to someone. *Id.* The claims may be urgent. *See Leyva, supra* at 864 (statutory right to prompt wages). Parties may be in declining health. *See, e.g., Williford, supra* at 127-128 ("Of particular significance in balancing the competing interests of the parties in the case at bar are the human aspects of the needs of a plaintiff in declining health …"). And, more generally, the litigation may involve ongoing and future harm (as in the present case). *See, e.g., Lockyer, supra* at 1112 ("Attorney General seeks injunctive relief against ongoing and future harm"; more than "fair possibility" of damage under *Landis* if the Attorney General's claims have merit).[3]

Applying all of the foregoing principles, it is clear that the stay requested by the House should be denied.

### B. Application Of The Governing Legal Standards To The Present Motion.

Here, all relevant factors point squarely to the denial of the House's motion.

---

[3] It is worth noting that the House cites *Landis*, *Louis Vuitton* and two other cases for broad propositions concerning the power of the courts to consider and grant stay requests and the exercise of judgment and balancing involved. (Docket No. 109, p. 4). Beyond that, however, the House is silent as to the multitude of cases expounding on and applying these broad first principles, including *Landis*.

**First, the House does not, and cannot, point to any hardship to itself by allowing this action to continue to completion in this Court. It cannot, and does not, claim that waiting for this Court's ruling imposes a hardship or inequity upon it.**

**In point of fact, if one were to attempt to tease out something of substance from the House's motion, it would be that the House wants this Court to stay its pen simply because it does not want a decision that needs to be or would be on appeal at the Second Circuit. However, any such motion is both premature and lodged in the wrong court.**

**When this Court's ruling is issued, one of two scenarios will exist – either the case will be docketed on appeal at a time when this case can be coordinated (or even consolidated for briefing and oral argument) with the *Windsor* case[4] or the case will be docketed on appeal at a time when such coordination or consolidation is not feasible.[5] If the former scenario develops, it is difficult to imagine any reason for the House to seek a stay; and, in the latter scenario, the House could then decide to seek a stay from the Second Circuit. In any event, the proper venue for seeking a stay will be the Court of Appeals.**

**With no current hardship or inequity to press on this Court, the House has not in any way met its burden of showing a need for a stay, particularly in the face**

---

[4] **The Second Circuit has issued an Expedited Scheduling Order in the *Windsor* case appeal with the House's opening brief due on August 10th, the appellee's brief due on August 31st and the House's reply brief due on September 14th. Oral argument is set for Monday, September 24, 2012. (*Windsor*, 2d Cir., Order, June 22, 2012).**

[5] **The foregoing assumes an appeal regardless of the decision of this Court, and that seems to be a proper assumption. Neither the House nor the Department of Justice has, to date, ever failed to appeal any loss in a DOMA case; and the Plaintiffs in this case would appeal an adverse ruling.**

of the "fair possibility" of damage to the Plaintiffs.

Under governing precedent, the ongoing and future harm to each of the Plaintiffs is spelled out clearly in the pleadings and in the dispositive motion papers before the Court. The harms include the ongoing denial of health insurance enrollment for two spouses with severe, chronic health conditions; FMLA leave to care for a spouse determined to be "unemployable" by the Dept. of Veterans Affairs and forced into a disability retirement; Social Security benefits; spousal pension benefits; state retirement plan medical support benefits; and the savings available in the joint filing of federal income tax returns.

A stay of this Court's ruling on their claims also would deny the Plaintiffs the right to have their constitutional claims resolved in the ordinary course of their case without undue delay. And such a delay for the indeterminate period as requested by the House is wholly improper, particularly where the House has shown no need whatsoever for this Court to stay the issuance of its ruling.

Indeed, the House says only that this Court should withhold issuing its decision because the *Windsor* case is on appeal and involves the constitutionality of DOMA and thus "will inform, and likely will be fully dispositive of" the Plaintiffs' Equal Protection claim in this case. (Docket No. 109, p. 3; *see also* p. 5 (the "overriding consideration here" is that Plaintiffs' Equal Protection contention is "legally identical to the issue now before the Second Circuit in *Windsor*")).[6]

---

[6] While squarely relying on the *Windsor* case appeal, the House also alludes to the recent First Circuit decision striking down DOMA in what it calls "the *Massachusetts* case." (Docket No. 109, pp. 2-3). However, the existence of the

However, as *Landis* squarely held 76 years ago, only rarely will a litigant in one case "be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis, surpa* at 255. That is particularly so in this case where the House points to nothing, let alone any "rare circumstance," to support its request.[7]

Finally, the House alludes to "judicial economy" and "the interests of justice" as "plainly" favoring the grant of a stay. (Docket No. 109, p. 4). However, beyond stating the existence of the *Windsor* case appeal, the House offers nothing to support its claim. Indeed, it cannot. It is hardly in the interests of justice to the Plaintiffs to tell them – after nearly two years of litigation and an even longer period without access to vital federal programs – that they now will

---

First Circuit's decision adds nothing to the House's argument. Indeed, the House merely states that a grant of certiorari in that case seems likely and "would itself be an adequate reason" for a stay. (Docket No. 109, pp. 3, 5). Beyond merely using *Massachusetts* to repeat its *Windsor*-based argument, certiorari can be granted in the *Massachusetts* case no sooner than the last days of September, making a request for a stay based on such a grant premature by definition.

[7] Beyond the mere incantation of the existence of the *Windsor* appeal in the Second Circuit, the House cites only to the fact that another DOMA challenge, *McLaughlin v. Panetta*, 1:11-cv-11905 (D. Mass.), has been stayed in the District of Massachusetts because of the First Circuit's consideration of the constitutionality of DOMA in another case. (Docket No. 109, pp. 5-6). The House fails to note two points that make these situations totally and fundamentally different. First, the stay in *McLaughlin* – until 21 days after a ruling by the First Circuit – was by joint agreement of the parties. Second, when it was first stayed, the *McLaughlin* case had been recently filed; and the Defendants had not yet filed an answer or other responsive pleading. In short, unlike the present case, the *McLaughlin* case was not awaiting decision with all the parties' work complete. As a rule, a stay request early in a case can be deemed appropriate in proper circumstances. *See, e.g., Hospital of Barstow, Inc. v. Sibelius*, 2012 WL 893784 (C.D. Cal.) (stay requested slightly over two months after complaint was filed; short stay granted); *Tomco Equip. Co. v. Southeastern Agri-Systems, Inc.*, 524 F. Supp. 2d 1303, 1312 (N.D. Ga. 2008) ("it is sufficiently early for a stay to be effective").

not see a ruling in their case until all potential avenues of appeal are exhausted in someone else's case.  There is certainly no justice in that.

And if asked to make that sacrifice in the weighing of others' interests, what might those interests be – beyond the House's clear non-interest – in simply not wanting another appeal.  The House certainly sheds no light on that fundamental question.

As to judicial economy, it is not materially advanced by asking this Court – at this stage of the case – to refrain from issuing its ruling.  *The Sierra Club v. Dombeck*, 161 F. Supp. 2d 1052, 1062 (D. Ariz. 2001) (denying stay; judicial economy is better served by the court issuing an order on pending cross motions for summary judgment because they are fully briefed, argued and under advisement; court's opinion can then be taken into consideration by the parties "while undertaking further analysis").  As the court indicated in *Dombeck*, this Court's ruling and analysis will advance judicial economy by adding to the views under consideration in the Second Circuit in the ongoing analysis of this important constitutional issue.

Finally, it is not certain what the result will be in the *Windsor* case appeal.  The House is careful to modulate back and forth as to what a decision in the *Windsor* appeal could mean for this case – from "directly controlling" to "significantly inform[ing]." (Docket No. 109, p. 5).  In addition, the House fails to mention that it has challenged the Plaintiff's standing in *Windsor*, arguing essentially that the court should not have reached the merits of the constitutional claims.  (*Windsor*, Dist. Ct., Docket No. 50, pp. 24-25).  Although the district court

in *Windsor* rightly rejected this argument, (*Windsor*, Dist. Ct., Docket No. 93, pp. 6-9), the House has not indicated that it intends to abandon the argument on appeal.

In these circumstances, there is no judicial economy in simple delay. When this Court is asked to pick up this work one, two or more years from now, it will then be asking – potentially – to determine the impact of one as-applied challenge to DOMA vis a vis federal estate tax in the context of this pending as-applied DOMA challenge involving a number of different federal programs.

Rather than judicial economy, this motion seems to reflect simply Intervenor preference. And, again, the House is not foreclosed from seeking a stay in the appropriate venue, the Second Circuit, if it is so inclined in its wisdom when the question might be ripe for consideration. At present, it is not.

In sum, for all the foregoing reasons, the Plaintiffs respectfully request that the House's motion to stay be denied.

            Respectfully submitted,

            Joanne Pedersen & Ann Meitzen
            Gerald V. Passaro, II
            Raquel Ardin & Lynda DeForge
            Janet Geller & Joanne Marquis
            Suzanne & Geraldine Artis
            Bradley Kleinerman & James Gehre and
            Damon Savoy & John Weiss

            By their attorneys,

            **GAY & LESBIAN ADVOCATES &
            DEFENDERS**

            /s/  Gary D. Buseck
            Gary D. Buseck, #ct28461

gbuseck@glad.org
Mary L. Bonauto, #ct28455
mbonauto@glad.org
Vickie L. Henry, #ct28628
vhenry@glad.org
Janson Wu, #ct28462
jwu@glad.org
30 Winter Street, Suite 800
Boston, MA 02108
(617) 426-1350

JENNER & BLOCK

/s/ Paul M. Smith

Paul M. Smith, (pro hac vice motion to be filed)
psmith@jenner.com
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
(202) 639-6060

HORTON, SHIELDS & KNOX

/s/ Kenneth J. Bartschi

Kenneth J. Bartschi, #ct17225
kbartschi@hortonshieldsknox.com
Karen Dowd, #ct09857
kdowd@hortonshieldsknox.com
90 Gillett St.
Hartford, CT 06105
(860) 522-8338

AS TO PLAINTIFFS
SUZANNE & GERALDINE ARTIS
BRADLEY KLEINERMAN & JAMES GEHRE

SULLIVAN & WORCESTER LLP

/s/ David J. Nagle

David J. Nagle, #ct28508
dnagle@sandw.com
Richard L. Jones, #ct28506
rjones@sandw.com

One Post Office Square
Boston, MA  02109
(617) 338-2800

**DATED:  June 22, 2012**

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2012, a copy of the foregoing Plaintiffs' Opposition to Intervenor-Defendant's Motion to Stay Proceedings was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

/s/ Gary D. Buseck
_____
Gary D. Buseck